IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

| | |
|---|---|
| SHELBY NOVISKIS, Individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON CONSUMER INC., and PROCTER & GAMBLE,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Shelby Noviskis ("Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint ("CAC") against Defendants Johnson & Johnson Consumer Inc. ("J&J" or "Defendant") and Procter & Gamble ("P&G" or "Defendant"), and in support states as follows:

## NATIURE OF THE ACTION

1. This is a class action lawsuit brought under Illinois's consumer protection laws by Plaintiff, and others similarly situated, who purchased the following over-the-counter ("OTC") decongestant products containing phenylephrine: Sudafed PE, and Vicks NyQuil, (collectively the "Products"). These Products are manufactured, sold, and distributed by Defendants and have been found by the U.S. Food and Drug Administration ("FDA") to lack efficacy. The Products' lack of efficacy in was not disclosed to Plaintiff prior to Plaintiff's purchase of the Products and Plaintiff would not have purchased the Products had she known they did not work as advertised. Plaintiff and the putative class suffered economic damages due to Defendants' misconduct and they seek injunctive relief and restitution for the full purchase price of the Products

they purchased. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**JURISDICTION AND VENUE**

2. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Plaintiff is a citizen of a state different from Defendants.

3. This Court has jurisdiction over each Defendant because both Defendants are authorized to conduct and do business in Illinois. Defendants have marketed, promoted, distributed, and sold the Products in Illinois and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through promotion, sales, distribution, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

**THE PARTIES**

5. Plaintiff Shelby Noviskis is a citizen and resident of Cook County, and at all times relevant hereto, has been a resident of Cook County. Within the class period define defined below, Plaintiff purchased Sudafed PE, and Vicks NyQuil in Cook and DuPage Counties. During that

time, based on the false and misleading claims by Defendants, Plaintiff was unaware that Defendants' Products were not an effective remedy for congestion and/or cold symptoms. Plaintiff purchased the Defendants' Products on the assumption that the labeling of the Products was accurate and that the Products worked as advertised. Plaintiff would not have purchased Defendants' Products had she known they were not effective and lacked efficacy. As a result, Plaintiff suffered injury in fact when she spent money to purchase Products she would not otherwise have purchased but for Defendants' misconduct, as alleged herein.

6. Defendant Johnson & Johnson Consumer Inc., a McNeil Consumer Healthcare Division, is a New Jersey corporation with its headquarters and principal place of business at 199 Grandview Road, Skillman, New Jersey, 08558. J&J manufactures, markets, advertises, labels, distributes, and sells Sudafed PE.

**7.** Defendant Procter & Gamble is an Ohio corporation with its headquarters and principal place of business at One Procter & Gamble Plaza, Cincinnati, Ohio 45202. Procter & Gamble manufactures, markets, advertises, labels, distributes, and sells Vicks NyQuil.

## INTRODUCTION

8. Defendant, J&J, is a corporation engaged in the manufacture, marketing, and sale of various OTC pharmaceutical products, including Sudafed PE.

9. Defendant, Procter & Gamble, is a corporation engaged in the manufacture, marketing, and sale of various OTC pharmaceutical products, including Vicks NyQuil.

10. Collectively, Defendants J&J and P&G marketed and sold the Products to consumers in Illinois and across the United States as an effective nasal decongestant.

11. The main active ingredient in the Products is phenylephrine hydrochloride, or "PE." In 1994, the FDA issued a final monograph establishing conditions under which OTC nasal

decongestant drug products are generally recognized as safe and effective ("GRASE") and not misbranded. Phenylephrine is included in the final monograph as an OTC oral nasal decongestant. Defendants marketed PE as an effective decongestant that should be used to relieve nasal congestion and sinus pressure associated with colds, allergies, and other respiratory conditions.

12. According to Defendants, phenylephrine works by constricting blood vessels in the nasal passages, which reduces swelling and congestion.

13. Over the years, Defendants made the following claims in their marketing materials concerning the efficacy of their Products,

14. For example, for Sudafed PE, these claims include:

   a) Relief from Nasal Congestion: Sudafed PE products provide relief from nasal congestion associated with colds, allergies, or sinus congestion.

   b) Fast-Acting: Some Sudafed PE products are fast-acting and provide rapid relief from congestion symptoms.

   c) 24-Hour Relief: Sudafed PE provide up to 24 hours of relief from congestion symptoms, reducing the need for frequent dosing.

   d) Sinus Pressure Relief: Sudafed PE's is highly effective in relieving sinus pressure in addition to congestion.

   e) Sudafed PE offers relief from multiple cold and allergy symptoms, such as nasal congestion, sinus pressure, sneezing, and runny nose.

15. For Vicks NyQuil, these claims include:

   a) The congestion, pressure & pain, clear your head, medicine.

   a) Fast Relief- Clear your head with fast acting nighttime relief.

   b) Powerful congestion, pressure and pain relief.

   c) Max strength sinus relief.

4

      d) Fast, powerful cold and congestion relief.

16. In 2007, the consumer advocacy group Public Citizen filed a petition with the U.S. Food and Drug Administration (FDA) regarding phenylephrine. The petition requested that the FDA re-evaluate the safety and efficacy of phenylephrine as a nasal decongestant and take regulatory action.

17. Public Citizen expressed concerns that phenylephrine, the active ingredient in many OTC decongestant products, was not as effective as another decongestant called pseudoephedrine.

18. The petition argued that the switch from pseudoephedrine to phenylephrine in many cold and allergy medications had not been supported by adequate scientific evidence demonstrating the latter's effectiveness in relieving nasal congestion.

19. Public Citizen also raised concerns about the potential side effects and safety of phenylephrine, suggesting that its use might lead to increased blood pressure in some individuals.

20. The FDA reviewed the concerns raised by the Public Citizen petition regarding the safety and efficacy of phenylephrine as a nasal decongestant. The FDA concluded that, based on the available data at the time of its review in 2007, phenylephrine could be considered effective as a nasal decongestant when used at the recommended doses.

21. Thus, in 2007, the FDA concluded that orally administered PE was Generally Recognized as Safe and Effective (GRASE).

22. The FDA's GRASE determination allowed Defendants to market the Products as an OTC or "over-the-counter" medication. This was an important designation to Defendants as it allowed them to market the Products to consumers without requiring a doctor's prescription, making it more accessible for self- treatment, and allowing Defendants to make billions of dollars in OTC sales.

23. However, on September 11th and 12th, 2023, the FDA issued a new report detailing its updated review of the efficacy of phenylephrine, based on the studies it initially reviewed in 2007 and additional studies obtained since its initial review. A copy of the FDA's report is attached as Exhibit A.

24. The FDA's findings are based on rigorous scientific research and evaluation.

25. At its initial 2007 Nonprescription Drugs Advisory Committee ("NDAC") meeting and review, the FDA reviewed clinical effectiveness data for oral doses between 5mg and 40mg in a total of 14 studies, of which 7 reported positive measurable efficacy results.

26. In its re-analysis of these studies in 2023, the FDA found significant problems:

> [w]hen considering the studies through a modern drug review lens, all of the studies (both positive and negative) were highly problematic in both design and methodology. All used a highly variable endpoint (NAR) to study a drug in the setting of a highly variable disease state (the common cold) that is no longer used as a primary endpoint to evaluate congestion in pivotal trials.[1] Further, all the positive studies (and most of the negative studies) were unpublished and therefore never peer-reviewed. Six of the seven positive studies came from a single study center (funded by the manufacturer of Neo-Synephrine), were very small in size, and (except in one instance) the results could not be duplicated at two other study centers (also funded by the same manufacturer) that used a similar study design and methodology. (emphasis added). Exhibit A

27. The FDA thus found that the original studies had data integrity issues and that the results from the Elizabeth study site, a study it relied on in 2007, could not be duplicated in at least two other Sterling-Winthrop study sites that used a similar study design and methodology.

28. As noted in the FDA's re-evaluation of the data, the original studies used to support

---

[1] The FDA's Guidance for Industry on Developing Drug Products for Treatment of Allergic Rhinitis recommends use of symptom scores for the primary endpoint in clinical trials. *See* FDA, 2018, Guidance for Industry; Allergic Rhinitis: Developing Drug Products for Treatment, https://www.fda.gov/regulatory-information/search-fda-guidance-documents/allergic-rhinitis- developing-drug products-treatment-guidance-industry (hereafter "FDA Guidance for Industry (2018)").

the GRASE determination in 2007 were based on "equivocal findings." Exhibit A. Indeed, there were "significant deficiencies" in the "design and conduct of these studies." Id.

29. In light of the methodological and design flaws it found, the FDA now believes that "the original studies evaluated for efficacy" are "unacceptable as continued support for the efficacy of monographed doses or oral PE." Exhibit A.

30. Since 2007, several additional large clinical trials have been conducted regarding the efficacy of phenylephrine.[2] Those studies provide evidence of the absence of a decongestant effect from the OTC approved doses of 10 mg.

31. For example, Horak et al (2009) found that PE was not significantly different from placebo in the mean change in subjective nasal congestion scores whereas pseudoephedrine, a positive control in the study, decreased congestion significantly greater than placebo and PE.

32. Day et al (2009) similarly reported no difference between PE and placebo with respect to decreased nasal congestion scores.

33. Gelotte and Zimmerman (2015) likewise reported a lack of local decongestion effect of PE, finding that doses up to three times the labeled OTC for oral phenylephrine are

---

[2] See, e.g., Gelotte, CK and BA Zimmerman, 2015, Pharmacokinetics, safety, and cardiovascular tolerability of phenylephrine HCl 10, 20, and 30 mg after a single oral administration in healthy volunteers, Clin Drug Investig, 35(9):547-558; Day, JH, MP Briscoe, JD Ratz, M Danzig, and R Yao, 2009, Efficacy of loratadine-montelukast on nasal congestion in patients with seasonal allergic rhinitis in an environmental exposure unit, Ann Allergy Asthma Immunol, 102(4):328- 338; Horak, F, P Zieglmayer, R Zieglmayer, P Lemell, R Yao, H Staudinger, and M Danzig, 2009, A placebo-controlled study of the nasal decongestant effect of phenylephrine and pseudoephedrine in the Vienna Challenge Chamber, Ann Allergy Asthma Immunol, 102(2):116-120; Meltzer, EO, PH Ratner, and T McGraw, 2015, Oral phenylephrine HCl for nasal congestion in seasonal allergic rhinitis: A randomized, open-label, placebo-controlled study, J Allergy Clin Immunol Pract, 3(5):702-708; Meltzer, EO, PH Ratner, and T McGraw, 2016, Phenylephrine hydrochloride modified-release tablets for nasal congestion: a randomized, placebo-controlled trial in allergic rhinitis patients, Ann Allergy Asthma Immunol, 116(1):66-71.

unlikely to be effective as a nasal decongestant.

34. Thus, the results of several studies reported after the initial efficacy determination of the Products in 2007 clearly demonstrate that PE is no more effective than placebo in decreasing nasal congestion and, thus, lacks efficacy.

35. On September 12, 2023, an FDA panel unanimously declared that phenylephrine, the active ingredient in the Products, is an ineffective decongestant.

36. As of 2007, nasal airway resistance ("NAR") was the principal methodology used to assess the effectiveness of oral PE. This methodology used measurements of airflow and air pressure in the nasal passage to calculate NAR as an indirect measure of the level of nasal congestion.

37. In 2018, however, the FDA issued new guidance for industry as it related to the use of nasal congestion symptom scores to evaluate congestion,[3] meaning that NAR was no longer used as a primary endpoint to evaluate congestion in studies.

38. Based on the FDA's new 2018 guidance, Defendants knew or should have known that their marketing claims regarding the Products' efficacy were false and misleading. This is because the primary endpoint for evaluating the efficacy of the Products had changed since the FDA's 2007 NDAC meeting, meaning that the previous data under which the Products were approved as GRASE no longer supported efficacy. There have been no published studies since the FDA's revised 2008 guidance for industry was released that demonstrate the effectiveness of oral phenylephrine as a decongestant. Accordingly, Defendants knew or should have known by at least 2018 that their marketing claims regarding the Products' efficacy were false and misleading.

39. Plaintiff and the class members purchased the Products in reliance on Defendants'

---

[3] FDA Guidance for Industry (2018).

false and deceptive marketing claims.

40. As a result of Defendants' false and deceptive marketing, Plaintiff and the class members suffered economic damages, including the cost of purchasing the Products.

## **PLAINTIFF'S FACTUAL ALLEGATIONS**

41. Plaintiff relied on the Sudafed PE and Vicks NyQuil's "Maximum Strength" and "Max Strength" labels respectively in deciding to purchase what she believed to be an effective nasal decongestants. Had Plaintiff known that phenylephrine, the only active oral nasal decongestant ingredient in Sudafed PE and Vicks NyQuil, is not the "Maximum Strength" or "Max Strength" nasal decongestant available on the market, she would not have purchased them.

42. Plaintiff resides in Chicago, Illinois and is a citizen of Illinois. Throughout the relevant period, Plaintiff purchased the Products at issue in this lawsuit and was exposed to and reasonably relied upon J&J's and P&G's representations. Specifically, Plaintiff purchased Sudafed PE: Sinus Congestion and Vicks NyQuil from different local Walgreens locations in Chicago and Itasca, Illinois. Upon purchase, Plaintiff reviewed the Products packaging, including the front-label representations, and reasonably believed from these representations that the Products were "Maximum Strength" or "Max Strength." In reasonable reliance on these representations, Plaintiff paid an increased cost for the Product, which were worth less than represented because the statements were not true and were highly misleading. The "Maximum Strength" or "Max Strength" representation on the Products packaging, was part of the basis of the bargain in that Plaintiff attributed value to those representations and Plaintiff would not have purchased the Products, or would not have purchased them on the same terms, if she knew the "Maximum Strength" or "Max Strength" representations were untrue and/or misleading. Plaintiff paid a price premium for empty promises that J&J and P&G did not keep. Had Plaintiff been aware that the "Maximum Strength"

9

or "Max Strength" representations made by J&J and P&G respectively on the Products was untrue, she would have paid less for the Products, or would not have purchased them at all.

## CLASS ALLEGATIONS

43. Plaintiff brings this action on behalf of herself and all other similarly situated class members (the "Class" or "Classes") pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendants for violations of Illinois state laws and/or similar laws in other states:

### Multi-State Class Action

All consumers who purchased Sudafed PE, and/or Vicks NyQuil, Products in the United States of America and its territories for personal use or consumption during the applicable statute of limitations period.

44. Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Sudafed PE, and/or Vicks NyQuil Products. Also excluded from this Class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

45. In the alternative, Plaintiff brings this action on behalf of herself and all other similarly situated Illinois consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Sub- Classes:

### Illinois Sub-Class

All consumers who purchased Sudafed PE, and/or Vicks NyQuil Products in the State of Illinois for personal use or consumption during the applicable statute of limitations period.

46. Excluded from the Classes are (a) any person who purchased the Sudafed PE

products for resale and not for personal or household use, (b) any person who signed a release of any J&J in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any J&J or any entity in which a J&J has a controlling interest, (d) any legal counsel or employee of legal counsel for J&J, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

47. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class/Sub-Classes contains thousands of purchasers of Defendants' Products who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

48. Plaintiff's claims are typical to those of all Class members because members of the Class are similarly injured through Defendants' uniform misconduct described above and were subject to Defendants' deceptive marketing claims that accompanied each and every Product. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class/Sub-Class.

49. Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiff and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

   a) whether Defendants' Products contained phenylephrine;

   b) whether Defendants' marketing statements are false, misleading, or objectively reasonably likely to deceive;

   c) whether the alleged conduct constitutes violations of the laws asserted;

   d) whether Defendants' alleged conduct violates public policy;

e) whether Defendants engaged in false or misleading advertising;

f) whether Defendants were unjustly enriched as a result of its labeling, marketing, advertising and/or selling of the Products;

g) whether Plaintiff and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

h) whether an injunction is necessary to prevent Defendants from continuing to market and sell Products that lack efficacy.

50. Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

51. A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain meaningful and effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

52. The Class also may be certified because Defendants have acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive

relief with respect to the members of the Class as a whole.

53. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described above, such as continuing to market and sell Products that lack efficacy, and requiring Defendants to provide a full refund of the purchase price of the Products to Plaintiff and Class members.

54. Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled. Indeed, to this day, Defendants continues to market and sell the Products that have been determined by a unanimous FDA panel to lack efficacy.

## COUNT I

### Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act
### (On Behalf of the Plaintiff and the Illinois Sub-Class Against All Defendants)

55. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

56. Plaintiff brings this Count individually and on behalf of herself the Illinois Sub-Class.

57. In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 505/1, et seq., prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any

material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ."

58. Plaintiff and the Illinois Subclass members were injured by J&J's and P&G's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Illinois Subclass. Because Plaintiff and the Illinois Subclass members relied on J&J's and P&G's misrepresentations, concealments and omissions when purchasing the Products, they were injured at the time of purchase.

59. J&J does business in Illinois, sells and distributes the Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of the Products in Illinois and elsewhere in the United States.

60. P&G does business in Illinois, sells and distributes the Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of the Products in Illinois and elsewhere in the United States.

61. The Products purchased by Plaintiff and the Illinois Subclass members were "consumer items" as that term is defined under the Illinois Consumer Fraud Act.

62. J&J and P&G engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. 505/2 when they misrepresented and deceptively concealed, suppressed and/or omitted the material information known to J&J and P&G's as set forth above concerning its Products, which has caused damage and injury to Plaintiff and the Illinois Subclass Members. Plaintiff and the Illinois Subclass members were injured by J&J's and P&G's unfair and deceptive acts at the time of purchasing the Products.

63. J&J's marking of Sudafed PE products violates this prohibition by deceiving consumers into believing Sudafed PE is a "Maximum Strength" decongestant or pain reliever/fever reducer.

64. P&G's marking of Vicks NyQuil products violates this prohibition by deceiving consumers into believing Vicks NyQuil is a "Max Strength" decongestant or pain reliever/fever reducer.

65. J&J and P&G engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of this Section.

66. J&J engaged in misleading and deceptive advertising that represented that the Sudafed PE products were "Maximum Strength." J&J chose to package and market the products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe J&J's false and misleading "Maximum Strength" representations and omissions.

67. P&G engaged in misleading and deceptive advertising that represented that the Vicks NyQuil products were "Max Strength." P&G chose to package and market the products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe P&G's false and misleading "Max Strength" representations and omissions.

68. J&J's and P&G's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

69. J&J and P&G intended Plaintiff and the Illinois Subclass members to rely on its deceptive acts when purchasing the Products.

15

70. J&J's and P&G's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass members at the time of purchase.

71. Plaintiff and the Illinois Subclass members would not have purchased, or would have paid less for, the Products but for J&J's and P&G's material misrepresentations as described in this Complaint.

## COUNT II

### Violation of the Illinois Uniform Deceptive Trade Practices Act
### (On Behalf of the Plaintiff and the Illinois Sub-Class Against All Defendants)

72. Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

73. Plaintiff brings this action on behalf of herself and the Illinois Subclass.

74. The Illinois Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/2, et seq., prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

75. 815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(5) represents that goods or services have . . . uses, benefits or quantities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

76. J&J's marking of Sudafed PE products violates this prohibition by deceiving consumers into believing Sudafed PE is a "Maximum Strength" decongestant or pain reliever/fever reducer.

16

77. P&G's marking of Vicks NyQuil products violates this prohibition by deceiving consumers into believing Vicks NyQuil is a "Max Strength" decongestant or pain reliever/fever reducer.

78. J&J and P&G engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of this Section.

79. J&J engaged in misleading and deceptive advertising that represented that the Sudafed PE products were "Maximum Strength." J&J chose to package and market the products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe J&J's false and misleading "Maximum Strength" representations and omissions.

80. P&G engaged in misleading and deceptive advertising that represented that the Vicks NyQuil products were "Max Strength." P&G chose to package and market the products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe P&G's false and misleading "Max Strength" representations and omissions.

81. J&J intended that Plaintiff and each of the other Illinois Subclass members would reasonably rely upon the material omissions concerning the true nature of the Sudafed PE products.

82. P&G intended that Plaintiff and each of the other Illinois Subclass members would reasonably rely upon the material omissions concerning the true nature of the Vicks NyQuil products.

83. J&J's and P&G's concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and each of the other Illinois

17

Subclass members to be deceived about the true nature of the products.

84. J&J's and P&G's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

85. J&J's and P&G's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass Members at the time of purchase.

86. Plaintiff and the Illinois Subclass Members would not have purchased, or would have paid less for, the Products but for J&J's and P&G's material misrepresentations as described in this Complaint.

87. J&J and P&G intended Plaintiff and the Illinois Subclass members to rely on their deceptive acts when purchasing the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, pray for judgment against the Defendants as to each and every count, including:

A. An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class/Sub-Classes, and requiring Defendants to bear the costs of class notice;

B. An order enjoining Defendants from selling the Products;

C. An order enjoining Defendants from suggesting or implying that they are effective for human application;

D. An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Products;

E. An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the

unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F. An order requiring Defendants to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising in violation of the above-cited authority, plus pre- and post-judgment interest thereon;

G. An order requiring Defendants to disgorge any ill-gotten benefits received from Plaintiff and members of the Class/Sub-Classes as a result of any wrongful or unlawful act or practice;

H. An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I. An order awarding attorneys' fees and costs to Plaintiff and the Class/Sub-Classes; and

J. An order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED: September 20, 2023.

By: /s/ Ken Moll
Ken Moll
Valeria F Benitez
**MOLL LAW GROUP**
180 N Stetson Ave, 35th Floor
Chicago, Illinois 60601
Tel: (312) 462-1700
Fax: (312) 756-0045
E-mail: info@molllawgroup.com
kmoll@molllawgroup.com
*Counsel for Plaintiff*